**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARMELO MARTINEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>PARTS AUTHORITY, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff CARMELO MARTINEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant PARTS AUTHORITY, LLC ("Defendant"), and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act ("FLSA"), he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to the misclassification of non-exempt employees as exempt; (2) liquidated damages; and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the State wage laws where Defendant does business, he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages,

including overtime, due to the misclassification of non-exempt employees as exempt; (2) statutory penalties, (3) liquidated damages; and (4) attorneys' fees and costs.

3.      To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty (40) which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work are not covered by the protection of a State's wage laws, Plaintiff further alleges that he and others similarly situated are entitled to recover from Defendant the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

4.      Defendant is a national distributor of automotive and truck parts, tools, equipment, and transmissions, with customers in both commercial and e-commerce channels.

5.      Plaintiff, FLSA Collective Plaintiffs, and putative Class members, who are all current and former store managers employed by Defendant throughout the United States, were victims of Defendant's underpayment of wages, including overtime. Defendant instituted a nationwide policy of improperly misclassifying Plaintiff, FLSA Collective Plaintiffs, and the Class as exempt employees, when they were required to be classified as non-exempt.

6.      Plaintiff brings this wage and hour class action on behalf of himself and all persons who, during the applicable limitations period, up to and including the present, were similarly underpaid by Defendant in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) Arizona: Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

2) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

3) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

4) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

5) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

6) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.;*

7) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

8) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

9) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

10) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

11) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

12) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

13) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

14) New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

15) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

16) New York: New York Labor Law, Article 19 § 650 *et seq.*, and Article 6 § 190 *et seq.*;

17) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

18) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

19) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

20) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

21) Utah: Utah Minimum Wage Act, Utah Code Ann. §34-40-103 *et seq.;*

22) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

23) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*; and

24) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 *et seq.* and 274.01 *et seq.*

(collectively, the "Relevant State Wage Laws" or "RSWL")

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, as well as under Section 16(b) of the FLSA, as amended 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this State and because the events giving rise to this action took place in this District.

## PARTIES

9.     Plaintiff CARMELO MARTINEZ is a resident of Westchester County, New York.

10.     Defendant's business has branch locations throughout the United States. Defendant's branches are operated across the United States through the corporate entity PARTS AUTHORITY, LLC. All locations are operated as a single integrated enterprise under the common control of Defendant. Specifically, the Locations are engaged in related activities, share common ownership, operate under a common executive management team, and have a common business purpose.

a) The Locations share common management through their common executive management team, which sets policies and procedures across the enterprise. *See* **Exhibit A** (Defendant's executive management team from Defendant's website).

b) In every state Defendant maintains an office, Defendant is registered, either through its entity name or a subsidiary company, on each state's Secretary of State – Division of Corporations website. Moreover, these websites identify Defendant's corporate headquarters as 3 Dakota Drive, Suite 110, New Hyde Park, NY 11042. *See* **Exhibit B** (Defendant's Incorporation Information For Multiple States Listing the Same Principal Place of Business).

c) Defendant maintains a centralized payroll department and human resources department. For example, Defendant operates a single career page allowing interested persons to apply to positions across all branch Locations. *See* **Exhibit C** (Defendant's Single Career Page). Additionally, all positions mentioned on this page are also mentioned on Defendant's LinkedIn page. *See* **Exhibit D** (Defendant's LinkedIn Page).

d) Moreover, employees at all Locations receive the same benefits. *See* **Exhibit E** (Defendant's Website's Career Page).

e) Defendant lists all its Locations together on its website. *See* **Exhibit F** (Defendant's Website Advertises All Auto Parts Store Locations Nationwide).

f) On all its social media platforms, Defendant advertises all its branches together. *See* **Exhibit G** (Defendant's Social Media Pages).

11.     Defendant PARTS AUTHORITY, LLC is a foreign limited liability company organized under the laws of the State of Delaware, with corporate headquarters at 3 Dakota Drive,

Suite 110, New Hyde Park, NY 11042, and an address for process of service located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207. Defendant PARTS AUTHORITY, LLC does business as a national automotive parts distributor, offering products and services for customers in the commercial and e-commerce channel; including but not limited to brake pads, engine management, suspension parts, HVAC, cooling, and chemicals.

12. At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the relevant state wage and hour laws.

13. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendant.

14. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all employees improperly misclassified as exempt and paid on a fixed salary basis without overtime premiums for overtime hours of work, including but not limited to store managers , among others, employed by Defendant on or after the date that is three (3) years before the filing of this Complaint ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including unpaid overtime wages. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message, to the last contact known to Defendant.

## NATIONWIDE RULE 23 CLASS ALLEGATIONS

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all on behalf of all employees improperly misclassified as exempt and paid on a fixed salary basis without overtime premiums for overtime hours of work, including but not limited to store managers, among others, employed by Defendant on or after the date that is six years and 228 days (pursuant to New York's executive tolling during the COVID-19 pandemic) before the filing of this Complaint or the applicable statute of limitations period for each State's wage laws (the "Class" or "Class members").

19.     The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

20.     To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendant has employees.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant. There is no doubt that there are more than forty Class members in the Class. The proposed Class includes a Subclass of employees who were employed in States with requirements to provide earning statements and wage notices to employees ("Wage Notice Subclass"), and who will have additional state law claims against Defendant. There is no doubt that this Subclass also contains more than forty (40) members. Plaintiff is a member of the Class and the Wage Notice Subclass.

22.     Plaintiff's claims are typical of claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class or in separate actions. All Class members were subject to the same corporate practices of Defendant of failing to pay all overtime wages owed, due to Defendant's misclassification of non-exempt employees as exempt.

23.     With regard to the Wage Notice Subclass, due to the failure to include all hours of work and outline overtime premium rates in Class members' compensation, paystubs and wage notices, Defendant violated Plaintiff's and the Wage Notice Subclass's rights as well as State wage laws and regulations.

24.     Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.    Defendant and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendant employed Plaintiff and Class members within the meaning of applicable state and wage hour laws;

    b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant required Plaintiff and the Class members to engage in;

    c) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class members for their work;

    d) Whether Defendant properly compensated Plaintiff and Class members for all hours worked;

    e) Whether Defendant failed to pay Plaintiff and Class members proper wages, including overtime, due to compensation on a fixed salary;

    f) Whether Defendant tracked and paid Plaintiff and Class members for their actual hours worked; and

    g) Whether Defendant paid Plaintiff and Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty (40) each workweek.

## STATEMENT OF FACTS

29.    Sometime in 2013, Plaintiff was hired to work as a store manager at "Total Automotive", located at 118 Saw Mill River Road, Yonkers, NY 10701. In or around June 2019,

Defendant purchased "Total Automotive", and Plaintiff began his employment with Defendant. Plaintiff's employment with Defendant terminated in or around August 2025.

30.    During his employment with Defendant, Plaintiff was compensated at a fixed weekly salary of $2,096.00.

31.    As a store manager, Plaintiff's duties included, but were not limited to, answering incoming calls, handling purchases on the cash registers, delivering automotive parts, and responding to customer inquiries. Although, his actual job duties were no different than a store employee, Plaintiff's formal job title was "store manager."  For over seventy-five percent (75%) of his workweeks, district managers and regional managers were present at Plaintiff's workplace and exercised managerial authority over all employees, including Plaintiff.

32.    Plaintiff's work schedule was five (5) days per week, Mondays through Fridays, from 8:00 a.m. to 4:00 p.m., for a total of forty (40) hours per week. However, Plaintiff worked in excess of his scheduled shifts, but without additional compensation, as detailed below.

33.    Plaintiff's fixed salary was based on a weekly schedule of forty (40) hours per week.  However, Defendant required Plaintiff to work over seventy (70) hours per week. As a result, Plaintiff was shorted overtime hours for every workweek. Similarly, FLSA Collective Plaintiffs and Class members were compensated at a fixed salary which did not account for their scheduled hours.

*Unpaid Wages, Including Overtime, due to Misclassification as an Exempt Employee*

34.    Throughout Plaintiff's employment, Defendant failed to track Plaintiff's hours. Because Defendant gave Plaintiff, FLSA Collective Plaintiffs, and Class members misclassified managerial titles, Defendant did not use a time tracking system to ensure they could receive compensation for all hours worked.

35.    On a daily basis, rather than work until 4:00 pm, Plaintiff was required to stay past his scheduled shift until around 9:00 p.m., five (5) hours after his scheduled shift was supposed to end. Plaintiff was also required to work a sixth (6) day lasting thirteen (13) hours. FLSA Collective Plaintiffs and Class members were similarly required to work past their scheduled shifts but were not compensated for this time.

36.    Plaintiff was misclassified as an employee exempt from overtime pay and was compensated a fixed weekly salary regardless of how many hours he worked in a week. Because over 95% of Plaintiff's job duties consisted of answering incoming calls, handling purchases on the cash registers, delivering automotive parts, and responding to customer inquiries, among others, Plaintiff is a non-exempt employee. Throughout his employment, Plaintiff did not have the authority to hire or fire employees, promote employees, or handle employee grievances.

37.    Defendant's district managers were present in the store, supervising Plaintiff as he completed his duties. During the time they were present, the district managers were the sole individuals controlling the store's operations. When the district managers were not physically present, Plaintiff was repeatedly required to report to them during phone calls and meetings. Put simply, Plaintiff had no control over the store.

38.    For each store, Defendant's district managers, along with its centralized Human Resources Department, controlled the following: (i) the hiring, firing, and promotion of employees, (ii) employee grievances and investigations, (iii) the supervision of formally non-exempt employees in Plaintiff's store, (iv) the store budgets, (iv) employees' hourly rates and pay, (v) store policies regarding vacation days and sick leave, (vi) approvals of employees' vacation days and sick leave, (vii) inventory requirements, (viii) the minimum and maximum quantities of each store's items, and (ix) employees' promotions, raises, and personnel numbers. FLSA

Collective Plaintiffs and Class members similarly were deprived of real executive capacity, as executive duties were delegated to the district managers.

39.     In reality, Plaintiff, FLSA Collective Plaintiffs, and Class members spent the vast majority of their workdays engaged in manual work and sales.

40.     At no point in time in Plaintiff's employment with Defendant did Plaintiff: (i) regularly direct the work of two (2) or more other employees, (ii) have the authority to hire or fire employees, (iii) influence the hiring, firing, advancement, promotion or any other changes of status of other employees, (iv) perform work that was not assigned by Defendant, or (v) have the primary duty of management of the enterprise in which he was employed, or of a customarily recognized department or subdivision thereof.

41.     After  Defendant acquired ownership of Plaintiff's store, Defendant cut the store's workforce down by forty (40%) percent. As a result of these layoffs, the store became understaffed, and it was increasingly difficult for Plaintiff to complete all his tasks in any given workday. In attempt to exercise the executive authority which Defendant's classification of him as an exempt employee would indicate him to have, Plaintiff informed Defendant of these difficulties and requested hiring staffing. Defendant dismissed Plaintiff's concerns, since his position truly lacked any executive powers.

42.     Additionally, whenever Plaintiff attempted to exercise any authority over employees' sick leave, Defendant's response affirmed the fact that Plaintiff's position and duties were far from executive. By way of illustration, one of Defendant's employees had a medical emergency and was required to take over three (3) days off to undergo surgery and recover. Plaintiff raised the issue with Defendant's Human Resources Department, and recommended this employee receive sick pay during this time. However, Defendant gave no weight to Plaintiff's

recommendation, informing Plaintiff that this employee must be either fired or provided with leave under the FMLA, and Plaintiff could not approve the sick leave as requested.

43.    The Department of Labor requires that "The term 'employee employed in a bona fide executive capacity' in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at not less than the level set forth in § 541.600;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

29 C.F.R. § 541.100

44.    Here, Plaintiff, FLSA Collective Plaintiffs, and Class members do not meet the requirements set forth by the Department of Labor, and are thus owed overtime wages for all hours worked over forty (40) for each week in which they were employed by Defendant.

45.    Courts in this Circuit have frequently questioned whether employees with duties comparable to Plaintiff's must be considered exempt under the FLSA's executive exemption:

- *See Paganas v. Total Maint. Sol., LLC*, 726 F. App'x 851 (2d Cir. 2018) (holding that the district court erred in granting defendants' summary judgment motion because there were issues of material fact regarding the second and fourth prong of the executive exemption. Specifically, the plaintiff, a building manager at a university, alleged that: (i) he was engaged in non-exempt duties for ninety (90%) percent of his employment, and (ii) his feedback regarding hiring, firing, discipline, or promotions was given little weight by upper management).

- *See Tamayo v. DHR Rest. Co., LLC,* 2017 U.S. Dist. LEXIS 18102 (S.D.N.Y. Feb. 3, 2017) (denying summary judgment for defendants because the plaintiff, who

worked as a head chef, could reasonably convince a jury that he was non-exempt when: (i) he could not make decisions regarding hiring, firing, or promoting employees without consulting upper management, (ii) his feedback regarding hiring, firing, or promotions was given little weight by upper management, and (iii) he engaged in non-exempt work for around eighty (80%) percent of his workweeks).

- *See Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.,* 704 F. Supp. 3d 337, 367 (E.D.N.Y. 2023) ("The testimony overwhelming establishes that Plaintiff was a manual laborer who spent ninety-five percent (95%) of his time cutting, fabricating, polishing, and installing stone countertops. These are clearly his primary responsibilities, not the performance of unidentified and unsubstantiated managerial duties. Because Defendants have utterly failed to meet their burden to demonstrate that Plaintiff performed managerial duties as his <u>primary duty</u>, Defendants' executive exemption defense must fail as a matter of law.").

46.    Moreover, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class members never had any agreement with Defendant that their fixed salaries would cover their overtime hours.

<u>*WTPA Violations*</u>

47.    Plaintiff and Wage Notice Subclass members never received proper wage notices from Defendant. They also did not receive accurate wage statements from Defendant. 41 of 50 States require paystubs with accurate information as to employees work hours and rates of pay. These States include most of the States where Defendant has employees.

48.    Defendant further violated the WTPA and other relevant state wage and hour laws by failing to provide Plaintiff and Wage Notice Subclass members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and applicable state laws. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, at *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements

provided failed to accurately indicate the amount of time *actually* worked by tipped employees")
(emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015)
(holding that "the 'number of overtime hours' that appears on the wage statement should include
every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021
U.S. Dist. LEXIS 151528, at *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received,
they were not accurate insofar as they did not accurately reflect the hours *actually* worked")
(emphasis added).

49.     In failing to provide proper wage statements and notices, Defendant has failed to

comply with the law in a manner that entails a concrete harm to an interest identified by the

legislatures of the states that Wage Notice Subclass members worked. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage
> notices and statements, as required by NYLL §§ 195(1) and 195(3). These
> provisions were enacted as part of New York's Wage Theft Prevention Act
> ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees
> to seek civil and criminal avenues of remedy for their employers failing to follow
> labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010
> S.B. 8380. More specifically, the New York State Assembly passed the WTPA to
> address studies showing that a large number of employees were not being paid the
> wages owed to them, and that many employers were not adequately informing their
> employees of their wages and how they are calculated in language the employees
> could understand. *Id.* The New York State Assembly opined that existing penalties
> did not adequately deter employers from paying less than the wages owed, and
> stated that the WTPA would dramatically change this by increasing penalties for
> violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20,
2020)

50.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and

Wage Notice Subclass members. Defendant's conduct actually harmed Plaintiff and Wage Notice

Subclass members. Defendant's failure to provide wage notices and paystubs listing all hours

actually worked and rates of pay, including overtime hours and overtime rates, deprived employees

of the ability to contest the pay provided by Defendant, allowed Defendant to hide its wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Wage Notice Subclass members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendant's failure to provide wage notices and wage statements to employees allowed Defendant to hide its responsibility and deprive employees of timely compensation.

51.     Had the wage statements Defendant provided to Plaintiff and Wage Notice Subclass members accurately listed the total number of hours Plaintiff and Wage Notice Subclass members actually worked, as required by law, Defendant would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Wage Notice Subclass members to vindicate their rights under their respective State wage laws. The deprivation of these possibilities therefore constitutes an injury.

52.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Wage Notice Subclass members. This delayed payment caused Plaintiff and Wage Notice Subclass members to struggle to pay bills and other debts.

53.     Defendant knowingly and willfully operated its business with a policy of not providing proper wage notices and wage statements as required by the Relevant State Wage and Hour Laws.

54.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct

17

effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

55.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

56.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18    (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

57.    Here, it is clear that Defendant's failure to provide Plaintiff and Wage Notice Subclass members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiff and Wage Notice Subclass members. That, in turn, would have increased Plaintiff's and Wage Notice Subclass members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

58.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the

reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

59.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and Wage Notice Subclass members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

60.     Whether or not any Wage Notice Subclass members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

61.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

62.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Wage Notice Subclass members cannot even attempt to have their earnings report corrected because Defendant *did* report what it actually paid Plaintiff and Wage Notice Subclass members. The problem, rather, is that Plaintiff and Wage Notice Subclass members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to her social security benefits as soon as Defendant sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.    Defendant knowingly and willfully operated its business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the Relevant State Wage and Hour Laws.

64.    Defendant knowingly and willfully operated its business with a policy of not providing proper wage notices and statements as required by the Relevant State Wage and Hour Laws.

65.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the legislatures of the states of which Subclass members worked in. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

66.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Wage Notice Subclass members. Defendant's conduct actually harmed Plaintiff and Wage Notice Subclass members.  Defendant's failure to provide proper pay notification, such as paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Wage Notice Subclass members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide its wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Wage Notice Subclass members' rights.  This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees.  Defendant's failure to provide a wage notice to employees allowed Defendant to hide its responsibility and deprive employees of timely compensation.

67.     Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide its wrongdoings from employees, and continues to attempt to hide its wrongdoings necessitating the current litigation.  The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and Wage Notice Subclass members.  This delayed payment caused Plaintiff and Wage Notice Subclass members to struggle to timely pay bills and delay or forgo purchases.

68.     Defendant knowingly and willfully operated its business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class members.

69.     Defendant knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs and Class members to a policy of not paying them for all hours worked, including overtime, in violation of the FLSA and applicable State wage laws.

70.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

71.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

72.     At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

73.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74.     At all relevant times, Defendant had a gross annual revenue in excess of $500,000.

75.     At all relevant times, Defendant had a policy and practice of failing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including their overtime premiums for hours worked over forty (40) each week, due to Defendant's misclassification of non-exempt employees as exempt.

76.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of the Court to amend this Complaint to set forth the precise amount due.

77.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendant knew or should have known such was due.

78.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

79.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

80.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime wages; plus an equal amount as liquidated damages.

81.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## STATEMENT OF CLAIM

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

82.     Plaintiff realleges and reavers all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

83.     At all relevant times, Plaintiff and Class members were employed by Defendant within the meaning of the New York Labor Law, §§ 2 and 651.

84.     At all relevant times, Defendant knowingly and willfully violated Plaintiff and Class members' rights by failing to pay wages in the lawful amount for all hours worked in excess of forty (40) hours each week, due to the misclassification of non-exempt employees as exempt.

85.     Defendant knowingly and willfully operated its business with a policy of not providing Plaintiff and Class members proper wage notices, at date of hiring and annually thereafter, as required under the NYLL.

86.     Defendant knowingly and willfully operated its business with a policy of not providing Plaintiff and Class members accurate wage statements, as required under the NYLL.

87.     Due to Defendant's NYLL violations, Plaintiff and Class members are entitled to recover from Defendant unpaid overtime wages, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs, and disbursements of the action, pursuant to the NYLL.

## COUNT III

## <u>VIOLATIONS OF APPLICABLE STATE WAGE AND HOUR LAWS</u>

### (brought on behalf of a Rule 23 Class)

88.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

89.    At all relevant times, Class members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendant under the meaning of the FLSA.

90.    Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

91.    Defendant knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them for all hours worked, including the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a policy of misclassifying non-exempt employees as exempt, in violation of the state wage and labor laws outlined above.

92.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Wage Notice Subclass members, as required under the Relevant State Wage and Hour Laws.

93.    Due to Defendant's state law violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid compensation for all hours worked, unpaid overtime premiums, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

94.     In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, and the FLSA's overtime provisions are mirrored by State wage laws, these State laws encompass class members' claims.

95.     Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

96.     Due to Defendant's state law violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid wages, unpaid overtime premiums, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

### COUNT IV

### VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT

### (brought on behalf of a Rule 23 Class)

97.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

98.     To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class members assert such claims under breach of contract and unjust enrichment.

99.     When Plaintiff and Class members entered into employment with Defendant, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

100.    Plaintiff and Class members provided services to Defendant as required under their agreements. However, Defendant's failure to compensate all hours of work, including gap-time hours, breached the Plaintiff's and Class members' agreements.

101.    As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

102.    Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiff's and Class members' performance, Defendant were unjustly enriched by the Plaintiff's and Class members' conduct and did not compensate Plaintiff and Class members fully.

103.    The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff's and Class members' conduct without paying fair value for it.

104.    As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class members, they have sustained damages in an amount according to proof at trial.

105.    Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class members' rights with the intent to cause injury to Plaintiff and Class members. Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and the Class, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and State wage laws;

b.    An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid regular and overtime wages, resulting from Defendant's misclassification of non-exempt employees as exempt, due under the FLSA and State wage laws;

d.    An award of liquidated damages as a result of Defendant's willful failure to pay wages pursuant to the FLSA;

e.    An award of liquidated damages as a result of Defendant's willful failure to pay wages, pursuant to the Relevant State Wage and Hour Laws;

f.    An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees;

     g.    Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

     h.    Designation of this action as a class action pursuant to F.R.C.P. 23;

     i.    Designation of Plaintiff as Representative of the Class;

     j.    Designation of Plaintiff as Representative of the Wage Notice Subclass; and

     k.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiff hereby gives this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: December 18, 2025                    Respectfully submitted,


By:        */s/ C.K. Lee*
           C.K. Lee, Esq. (CL 4086)
           **LEE LITIGATION GROUP, PLLC**
           148 West 24th Street, 8th Floor
           New York, NY 10011
           Tel.: 212-465-1188
           Fax: 212-465-1181

           *Attorneys for Plaintiff,*
           *FLSA Collective Plaintiffs*
           *and the Class*